LSUSAN M. CHEHARDY, Judge.
Appellants contest the finding of liability and allocation of fault against them, asserting that they should have been found free of fault and all liability should have been assessed against the other, non-appealing defendants. We disagree and we affirm the district court’s judgment.
This appeal arises from a December 6, 2000 multi-vehicle accident on Airline Highway in St. John Parish, in which Ne-ley Chaddrick was operating a truck owned by his employer, WHC, Inc. At the intersection of Airline Highway and Terre Haute Road, Chaddrick slowed to make a left turn and his truck was struck from the rear by a car driven by Kendra Dennison.
Rex Mareno was in a pickup truck following Dennison’s car. He swerved to avoid the collision, but his vehicle was *18 damaged by flying debris from the other vehicles. In addition, Mareno sustained lower-back strain due to jolting as he swerved to avoid the accident.
Dennison filed suit against Chaddrick, WHC, and their insurer, American Guarantee & Liability Insurance Company (AG & L). Mareno filed a separate suit against Dennison and her insurer, GEICO General Insurance Company (GEICO), and against Chaddrick and AG & L; GEICO filed a cross-claim against Chaddrick |4and AG & L in Mareno’s suit.[1] Chaddrick and AG & L moved for consolidation of the two lawsuits, which was granted.
Dennison’s claims were settled prior to trial. Mareno’s claims were tried in a bench trial on August 13, 2003.
The court rendered judgment in favor of Mareno against Dennison, Chaddrick, and their insurers, jointly, severally and in soli-do to the extent of their proportionate fault. The court found Dennison and GEI-CO 35% proportionally at fault in causing the accident, and found Chaddrick and AG & L 65% proportionally at fault.
The court awarded Mareno $3,500.00 in general damages and $1,320.80 in property damages, plus court costs and interest. Further, the court awarded GEICO 65% of the $7,010.93 GEICO sought as reimbursement for property damages paid to or on behalf of Dennison, plus court costs and interest. Chaddrick and AG & L appeal.
EVIDENCE
The witnesses at trial were Mareno, Dennison, Chaddrick, and the sheriffs deputy who investigated the accident.
Rex Mareno testified he was driving westbound in the left-hand lane of U.S. Highway 61 at the speed limit, around fifty-five. There was a slight drizzle, but visibility was good. His truck was behind Dennison’s car and her car was following Chaddrick’s truck. However, Mareno never really noticed the truck in front until Dennison’s car hit it. Then he saw the truck “at the last split second.” He recalled seeing all three of the vehicles in the left-hand lane at the moment of the accident. He never saw any cars or the truck in the right-hand lane. He saw |5brake lights on Dennison’s car, but did not notice any lights on Chaddrick’s truck. He also remembers seeing the front quarter-panel of Chaddrick’s truck as it began to turn. He was unable to recall whether he noticed Dennison’s brake lights first or Chad-drick’s quarter-panel first. He recalled seeing them “close to simultaneous.”
Mareno said he veered right and was able to avoid the accident, but debris from the wreck hit his truck as he passed. As he veered right, his truck slid to the right onto the shoulder. He immediately turned the wheel to the left more and then his truck jolted, causing his body to jolt to the right also.
Kendra Dennison testified she was heading west on Airline Highway in St. John Parish. She said the weather was sunny and there was no rain until the accident happened. She estimated she was traveling about forty-five, but was unsure. She was in the right lane. There was a large white pickup truck in front of her in the right-hand lane. She did not notice any vehicle behind her. She saw the driver in the white truck put on his blinkers to turn right, so she moved over to the left-hand lane. In a “blink of an eye,” the truck turned left in front of her from the right-hand lane. She had no warning it was *19 going to make a left turn. She never saw him make a signal for a left-hand turn. On cross-examination, she admitted the weather did not play any part in the accident.
Neley Chaddrick testified he was working in the Laplace area at the time and had a co-worker, Randy DeVille, in the truck with him that day. He was familiar with that stretch of highway because he had been traveling it every day he was on the job in Laplace. He said the sun was shining the day of the accident. He was driving in the left lane, coming back to his job site from a store. He denied ever being in the right lane at any time. He used his left-turn signal. He slowed down to make a left-hand turn, with his left-hand signal on, and he was hit from the rear.
| (¡Deputy Richard Hylander of the St. John the Baptist Parish Sheriffs Office testified he investigated the accident, but he did not see it happen. All he knew was what the drivers explained to him and what he discovered at the scene, and he had no recollection independent of his report. He said Dennison told him that the truck made a quick turn in front of her from the right lane of traffic and started making a left turn on Terre Haute Boulevard, but she could not stop in time because of the rain. He said Chaddrick told him that he was making a left turn with his left turn signal on, when he was struck from the rear by Dennison’s vehicle. Hy-lander said Mareno indicated he was unsure of who was in what lane.
In making her ruling, the trial judge noted that the witnesses gave three differing points of view as to how the accident happened. She found that all three parties testified consistently with what they told the police officer immediately after the accident. The judge had a problem with Chaddriek’s testimony, however, because he had a witness in the car with him the day of the accident, who could have corroborated everything Chaddrick said, but the witness was not at the trial to testify. The judge stated further:
[Bjased on the record, the evidence presented, and the testimony of the parties and credibility of the parties, the Court does find all the parties were credible in their assessment of the accident.
However, we have here Mr. Chad-drick and Miss Dennison who, although more seriously involved in the accident that happened here, neither of these two parties had too much of an idea that the accident was going to happen, it was so sudden. The one who saw it happen, was able to avoid it, was Mr. Mareno, and the Court finds that his testimony was credible as to what he saw and he had ample opportunity to prepare to meet the sudden emergency and ... to turn and avoid the accident. He was able to give it a lot of thought and he was able to expend some effort in doing so.
So, therefore, the Court finds that, based on everything I have before me, I’m going to find Miss Dennison thirty-five percent at fault, Mr. Chaddrick sixty-five percent at fault. I’m also going to find that as a |7result of this accident, and in avoidance of this accident, Mr. Mareno was injured and that his damages suffered total thirty-five hundred dollars in general pain and suffering, plus interest, costs, and property damage.
ISSUES
Appellants contend the trial court erred as a matter of law in failing to recognize and apply to Dennison the well-settled presumption of fault placed upon a rear-ending driver. Further, they assert the trial court committed clear and manifest error in allocating 65% fault to appellant, in light *20 of the “clear and overwhelming” testimony and evidence confirming that Dennison simply rear-ended appellants’ vehicle when it slowed to make a left turn.[2]
In response, Dennison and GEICO contend that' the trial court’s findings and allocation of fault were consistent with the evidence presented at trial and were based on the Court’s assessment of the credibility and accuracy of the witness testimony and the evidence submitted in support of that testimony.
Mareno supports Dennison’s position, asserting the trial court was not clearly wrong or manifestly erroneous in making a credibility call that favored Dennison’s version of events over Chaddriek’s.
LAW AND ANALYSIS
Louisiana places a statutory duty on drivers of following vehicles. “The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.” La.R.S. 32:81(A).
When a following vehicle rear-ends a preceding automobile, the following driver is presumed at fault and must prove a lack of fault to avoid liability. Spiller v. Ekberg, 00-130, p. 4 (La.App. 5 Cir. 5/17/00), 762 So.2d 226, 228. He may do |sso by establishing that his vehicle was under control, that he closely observed the leading vehicle and followed at a safe distance under the circumstances. Id.
When a following motorist is suddenly confronted with an unanticipated hazard created by a forward vehicle that could not reasonably be avoided, however, the following driver will be adjudged free from fault for the ensuing rear-end accident. Orgeron v. Prescott, 93-926, pp. 8-9 (La.App. 5 Cir. 4/14/94), 636 So.2d 1033, 1040, writ denied 94-1895 (La.10/28/94), 644 So.2d 654. It is the unanticipated hazard which forms the foundation for the sudden emergency doctrine, such as a dog darting into the road. Id. However, the rule of sudden emergency cannot be invoked by one who has brought that emergency on himself by his own wrong or who has not used due care to avoid it. Id. The sudden emergency doctrine is applicable to the standard of conduct of a motorist after an emergency has arisen, but it does not apply to. lower the standard of care of motorists before the emergency occurs. Id. See also, Dick v. Phillips, 253 La. 366, 218 So.2d 299, 302 (1969).
To assess liability in an accident case, the trier of fact must compare the relative fault of the parties. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967, 974 (La.1985). The allocation of fault is a factual determination subject to the manifest error rule. Spiller, 00-130 at p. 5, 762 So.2d at 228.
In the matter before us, there is a clear conflict in the testimony of the parties regarding how the accident occurred:
Dennison claimed she was driving with Chaddrick in front of her in the right lane, and that she switched to the left lane because Chaddrick put on his right turn signal, but that he suddenly turned left from the right lane, going across the left lane in front of her.
| flChaddrick said he was driving in the left lane and was never in the right lane, that he used his left-turn signal, and that Dennison’s car struck his when he slowed to make the left turn.
Mareno testified he was driving in the left lane and that he saw no vehicles in the *21 right lane. He saw brake lights on Denni-son’s car come on and also saw the quarter-panel of Chaddrick’s truck as it began to turn. He did not notice Chaddrick’s truck until the split-second before Denni-son’s car hit it. He said all three vehicles were in the left lane at the moment of the accident.
Mareno said there was a drizzling rain, but visibility was good. At the time of the accident, Dennison told Officer Hylander she was unable to stop because of the rain; at trial, however, she said the weather was sunny “until the accident happened,” although she later admitted the weather did not play a part in the accident. Chaddrick said it was sunny and there was no rain.
The investigating sheriffs deputy did not witness the accident; hence, his report simply related what the parties told him.
The trial court was presented with conflicting testimony regarding the location of Chaddrick’s vehicle. Chaddrick testified that at the time of the accident, he was attempting to make a left turn from the left lane, while Dennison testified that Chaddrick improperly and suddenly attempted to make a left turn from the right lane in front of her vehicle. The testimony of Mareno, driver of the third vehicle involved in the accident, does not conflict with the testimony of either witness, because he did not see the Chaddrick vehicle until the accident occurred.
The trial court obviously chose to believe Dennison’s testimony that Chaddrick made an improper turn. This credibility determination is supported by the record. Further, the trial court was aware of the argument regarding the | inpresumption applicable in rear-end collisions — the court denied Chaddrick’s motion for involuntary dismissal based on the presumption.
The trial court evidently concluded that Dennison met her burden of proving that the Chaddrick vehicle created an unanticipated hazard that relieved her of at least some of the liability created by the presumption.
In addition, according to Dennison’s un-controverted testimony, her vehicle did not strike Chaddrick’s vehicle directly from the rear; rather, the impact occurred on the driver’s side of the Chaddrick vehicle. The witness referred to photographs of the two vehicles that were admitted into evidence to support this testimony. The exhibit folder referred to in the record was not part of the record lodged with this Court, however, and we do not have the benefit of the photographs viewed by the trial court. In any event, the photographs apparently support Dennison’s version of the accident.
Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed on review, even though the reviewing court may feel its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue to be resolved by the reviewing court is not whether the factfinder was right or -wrong, but whether its conclusion was a reasonable one. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). Further, when two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
Under the circumstances here, we cannot say that the trial judge’s factual findings on the allocation of fault were either unreasonable or clearly wrong.
We acknowledge the trial court committed legal error in applying an adverse presumption against Chaddrick because he did not subpoena the passenger in his Intruck to testify.[3] Chaddrick said *22 that Randy DeVille was no longer working for WHC at the time of trial and Chad-drick did not know where he was. In such case, DeVille was equally available — or unavailable — to both parties and, hence, no adverse presumption should have been applied.
Nevertheless, changing the application of the adverse presumption does not change our evaluation of the other conclusions of the district court.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellants.

AFFIRMED.

. Some of the pleadings in the record set out GEICO's Ml name as “Government Employees Insurance Company.” However, the trial court’s judgment and GEICO’s appellate brief both refer to it as “GEICO General Insurance Company,” so we use that designation.

. Appellants do not contest the amounts of the monetary awards.

. The general rule as to unproduced witnesses is that where a party having control of an *22 available material witness fails to call that witness, an inference may be drawn that that testimony would have been adverse to the party. Cooper v. Diamond Offshore Drilling, Inc., 96-924, p. 9 (La.App. 5 Cir. 3/25/97), 692 So.2d 1213, 1217. That inference should not be made, however, where the witness is equally available to both parties. Id.